Mark Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Jay Edelson*
jedelson@edelson.com
Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin S. Thomassen*
bthomassen@edelson.com
Chandler R. Givens*
cgivens@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*ptc *Pro hac vice* admission to be sought.

*Attorneys for Plaintiff and the Putative Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN MCCLAIN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>ANCHORFREE, INC., a Delaware corporation,<br><br>*Defendant.* | Case No. 3:14-cv-1282<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200,** *et seq.***;**<br>2. **Violations of California's False & Misleading Advertising Law, Cal. Bus. & Prof. Code §§ 17500,** *et seq.***; and**<br>3. **Breach of Contract.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff John McClain ("McClain") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant AnchorFree, Inc. ("AnchorFree") to put an end to its deceptive marketing and sale of its "Hotspot Shield" software. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1. AnchorFree develops and distributes Internet privacy and security software that it claims will allow its users to anonymously browse any website to avoid "being tracked and spied upon."[1]

2. Unfortunately for its users, AnchorFree's claims aren't true. In particular, the software at issue—Hotspot Shield—doesn't always anonymize its users' web activity. Instead, Hotspot Shield only anonymizes its users web activities when they visit websites that use the standard World Wide Web communication technology known as Hypertext Transfer Protocol (HTTP).

3. The problem is that a significant number of websites—including many of the most heavily trafficked websites on the World Wide Web—now rely on Hypertext Transfer Protocol Secure (HTTPS) technology.[2] When Hotspot Shield users visit HTTPS websites, their activities aren't anonymous at all—a fact that AnchorFree completely omits.

4. AnchorFree charges consumers $29.95 for a one year subscription to Hotspot Shield. Purchasers of the software reasonably believe (based on AnchorFree's express statements about the software) that Hotspot Shield would protect their web browsing habits from prying eyes. Yet these statements are false, and as a result, millions of Hotspot Shield users remain oblivious to the fact that, despite their intention to browse the web anonymously, their actions are completely exposed.

5. Accordingly, this putative class action lawsuit seeks (i) to prevent AnchorFree from

---

[1] Hotspot Shield website, http://www.hotspotshield.com/benefits-of-vpn (last accessed March 3, 2014).

[2] The HTTP and HTTPs technologies are discussed further in <u>Section II</u> below.

continuing to misrepresent Hotspot Shield's functionality in the future, (ii) to inform current users that the software doesn't work as advertised (*i.e.*, that it doesn't always anonymize its users' web activity), and (iii) damages for those deceived into purchasing Hotspot Shield under false pretenses.

## PARTIES

6. Plaintiff John McClain is a natural person and citizen of the State of Texas.

7. Defendant AnchorFree, Inc. is a corporation existing under the laws of the State of Delaware with its principal place of business located at 450 National Avenue, Mountain View, California 94043. AnchorFree conducts business throughout the State of California (including in this District) and the United States.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

9. This Court has personal jurisdiction over Defendant because it conducts business in California and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from California.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District and because the decisions resulting in the unlawful conduct alleged in this Complaint originated in and emanated from this District. Venue is additionally proper because Defendant maintains its headquarters and principal place of business in this District.

## INTRADISTRICT ASSIGNMENT

11. Pursuant to Civil Local Rule 3-2(d), this case should be assigned to the San Francisco Division.

\*          \*          \*

# FACTUAL BACKGROUND

## I. A Brief Overview of AnchorFree and its Marketing of Hotspot Shield.

12. Founded in 2005, AnchorFree is a private software company that develops a single product: Hotspot Shield. AnchorFree boasts that over 200,000,000 copies of Hotspot Shield have been downloaded for use with Windows PCs, Macs, as well as iPhone and Android devices.[3]

13. On its website, AnchorFree says that Hotspot Shield is the "most trusted VPN service," and provides the following explanation about how the software works:

> VPN services such as the Hotspot Shield VPN protect[] your privacy online and secure your web sessions by creating a secure "tunnel" on the Internet between the VPN server and your device. Thus, any information transmitted is encrypted, protecting your private and sensitive information such as your passwords, credit card information, and banking information from eavesdroppers and hackers.
>
> VPN technology also enables you to hide your IP address by replacing your IP address with the VPN server's IP address. So the sites that you visit only see the IP address of the VPN server, not yours. This enables you to remain anonymous online, thereby preventing your ISP and the government from tracking your web browsing activities or anything you do on the Internet. If you are traveling or just wanting to hang out at the local Starbucks and want to use free WiFi to connect to the Internet, a VPN is a must-have utility to protect your privacy and prevent hackers and snoopers from stealing your personal information.[4]

14. Of particular importance in the text above is AnchorFree's statement that "the sites that you visit only see the IP address of [AnchorFree's] VPN server, not yours. This enables you to remain anonymous online, thereby preventing your ISP and the government from tracking your web browsing activities or anything you do on the Internet." As detailed below, AnchorFree makes countless similar claims about Hotspot Shield permitting users to anonymously browse any website. None of which are really true.

### 1. AnchorFree promises that Hotspot Shield allows users to anonymously browse <u>any</u> website.

15. A person searching the World Wide Web for software that lets them use the Internet

---

[3] Hotspot Shield, http://hotspotshield.com (last accessed March 5, 2014).

[4] Hotspot Shield website, http://www.hotspotshield.com/protect-your-privacy-online (last accessed March 5, 2014).

with anonymity will likely see AnchorFree's advertisements for Hotspot Shield like those shown in Figures 1 and 2 below.



(**Figure 1.**)

(**Figure 2.**)

16. Clicking on one of these advertisements leads the user to AnchorFree's website, where descriptions are provided about Hotspot Shield's ability to mask users' identities while they browse the web. Figures 3, 4, and 5 below show examples of these types of statements on AnchorFree's websites.



(**Figure 3.**)

(**Figure 4.**)

(**Figure 5.**)

17. The overall point conveyed by these and AnchorFree's other marketing materials is that Hotspot Shield "gives you a secure anonymous browsing experience and lets you visit any website you want without the fear of being tracked down or losing your sensitive information to hackers."[5] But the technical analyses below demonstrate why that's not actually the case.

## II. Hotspot Shield Doesn't Actually Anonymize Much of its Users' Web Browsing Activities.

18. HTTP is a fundamental technology underlying the communication of data on the World Wide Web.[6] At its most basic form, HTTP is the Internet protocol that facilitates the transmission of data between websites and Internet users.

19. Concerns about the security of communications sent via HTTP prompted the development of HTTP Secure (commonly referred to as "HTTPS") technology. Stated simply, HTTPS is responsible for adding a layer of encryption to HTTP traffic to protect against interception by nefarious actors.

### 1. When browsing HTTP websites, Hotspot Shield masks its users' IP addresses.

20. Under normal circumstances, when an individual visits a website using a web browser their computer directly connects to the website's server(s) and makes a request for webpage content. On receipt of that request, the website servers generally log the Internet Protocol address[7] ("IP address") of the user's computer. As a result, the website operator (*i.e.*, whoever manages the website's operations) possesses a record (an IP address and corresponding timestamp) that can ultimately be used to identify the individual who visited the webpage.

21. For example, through a personal lawsuit or government action, nearly anyone could subpoena the website's owner for its log files. After obtaining the IP addresses stored in those files, Internet Service Providers ("ISPs") (*e.g.*, Comcast, Verizon, AT&T) may be subpoenaed to provide

---

[5] Hotspot Shield website, http://www.hotspotshield.com/anonymous-web-surfing (last accessed March 5, 2014).

[6] History of the Web, http://www.webfoundation.org/vision/history-of-the-web/ (last accessed March 5, 2014).

[7] An IP address refers to a numerical or hexadecimal address typically assigned to a device (such as a computer) to facilitate communications with other devices connected to a network.

1  the account and contact information associated with that IP address at the time the individual visited
2  the website.

3      22.     One way for users to avoid the scenario above is to use a Virtual Private Network
4  ("VPN") tunnel to mask their IP addresses when visiting websites. A VPN tunnel lets users
5  remotely connect to another network and perform activities as if they were physically on that
6  network. Once connected, any actions conducted by the user will appear to originate from the VPN
7  servers, not the user's computer.

8      23.     Hotspot Shield relies on VPN technology to mask the IP addresses of users'
9  computers when visiting HTTP websites. If a connection attempt is made to an HTTP website,
10 Hotspot Shield recognizes the request and creates a VPN tunnel between the computer and
11 AnchorFree's VPN server. After the VPN connection is established, AnchorFree's VPN server then
12 forwards the user's request to the target website. Therefore, the website's server only logs the IP
13 address of AnchorFree's VPN server, *not* the IP address of the user's computer. As a result,
14 obtaining the website's server logs would be a fruitless endeavor for any third parties seeking to
15 discovery the identities of those who visited it. This process is illustrated in <u>Figure 6</u> below from
16 AnchorFree's website.



(**Figure 6.**)

   2.    **Hotspot Shield doesn't mask users' IP addresses when visiting HTTPS websites.**

26     24.    Although Hotspot Shield masks users' IP addresses when visiting HTTP websites, it

doesn't when a user visits an HTTPS website. In fact, when a user navigates to an HTTPS website, Hotspot Shield doesn't attempt to connect to an AnchorFree VPN server at all. Instead, the user's computer directly connects to the website's server(s). Thus, the website operator captures a log of the actual IP address of the user's computer.

25. Hotspot Shield's failure to anonymize user traffic when visiting an HTTPS website has severe consequences. According to an ongoing survey, over 40% of websites now use HTTPS.[8] Even Google, the top visited site on the World Wide Web, uses HTTPS by default.[9] And perhaps most telling, two of the websites identified by AnchorFree itself in Figure 6 above (Facebook and Twitter), both use HTTPS by default. Thus, the graphic's assertion that "website operators see IP address of VPN, not yours," couldn't be further from the truth. Both Facebook and Twitter *would* see the IP address of the Hotspot Shield user.

26. Against the backdrop above, it is evident that AnchorFree has intentionally misled Hotpot Shield users into believing that all of their web browsing is anonymous. In reality, a significant percentage of their Hotspot Shield uses' browsing activities (including when visiting many of the most popular websites on the World Wide Web) are completely exposed, and thus their identities easily ascertainable.

### III. Plaintiff McClain's Experience with Hotspot Shield.

27. In or around April 2013, Plaintiff McClain viewed an advertisement for Hotspot Shield (substantially similar to those depicted in Figures 1 and 2) while searching the World Wide Web for software that would allow him to anonymously browse the web.

28. Plaintiff McClain clicked on the advertisement and was directed to AnchorFree's website (www.hotspotshield.com), where he viewed representations substantially similar to those in Figures 3, 4, and 5 regarding Hotspot Shield's purported ability to mask its users' IP addresses while browsing the World Wide Web. Relying on these statements, and seeking to anonymously

---

[8] Web Technology Surveys, http://w3techs.com/technologies/overview/ssl_certificate/all (last accessed March 11, 2014).

[9] Alexa website, http://www.alexa.com/topsites (last accessed March 12, 2014).

browse the World Wide Web using Hotspot Shield, McClain downloaded a free trial version of the software.

29. After installing the free trial version of Hotspot Shield and using it for a period of time, Plaintiff McClain was led to believe that the software was working and that he was indeed anonymously browsing the World Wide Web.

30. Unfortunately, and as described herein, Hotspot Shield was not actually functioning as advertised. Specifically, each time Plaintiff McClain visited an HTTPS website, his web browsing traffic wasn't anonymous. Thus, his identity was exposed to every HTTPS website that he visited.

31. McClain reasonably relied upon AnchorFree's express representations about Hotspot Shield's utility. Namely, that Hotspot Shield would anonymize his web browsing activities when visiting any website on the World Wide Web. But for these representations, McClain would not have purchased nor continued to use Hotspot Shield.

## CLASS ALLEGATIONS

32. **Class Definition**: Plaintiff McClain brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and a Class of similarly situated individuals defined as follows:

All individuals and entities in the United States that purchased Hotspot Shield.

Excluded from the Class and are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entity's current and former employees, officers, and directors, (2) the Judge to whom this case is assigned and the Judge's immediate family, (3) persons who execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

33. **Numerosity**: The exact number of members of the Class is unknown and is not

available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals and other entities. Class members can be easily identified through Defendant's records.

34. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

    a) whether Defendant intentionally misrepresents that Hotspot Shield anonymizes its users' web browsing;

    b) whether Defendant's conduct described herein was willful;

    c) whether Defendant's conduct described herein constitutes a violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

    d) whether Defendant's conduct described herein constitutes a violation of False and Misleading Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and

    e) whether Defendant's conduct described herein constitutes a breach of contract.

35. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of AnchorFree's uniform wrongful conduct during transactions with Plaintiff and the Class.

36. **Adequate Representation**: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class, and he has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and AnchorFree has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they

1  have the resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of
2  the other members of the Class.

3     37.   **Policies Generally Applicable to the Class**: This class action is appropriate for
4  certification because AnchorFree has acted or refused to act on grounds generally applicable to the
5  Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of
6  conduct toward the members of the Class and making final injunctive relief appropriate with respect
7  to the Class as a whole. AnchorFree's policies challenged herein apply and affect the members of
8  the Class uniformly and Plaintiff's challenge of these policies hinges on AnchorFree's conduct with
9  respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

10    38.   **Superiority**: This class action is also appropriate for certification because class
11 proceedings are superior to all other available methods for the fair and efficient adjudication of this
12 controversy and joinder of all members of the Class is impracticable. The damages suffered by the
13 individual members of the Class will likely be small relative to the burden and expense of
14 individual prosecution of the complex litigation necessitated by AnchorFree's wrongful conduct.
15 Thus, it would be virtually impossible for the individual members of the Class to obtain effective
16 relief from AnchorFree's misconduct. Even if members of the Class could sustain such individual
17 litigation, it would not be preferable to a class action because individual litigation would increase
18 the delay and expense to all parties due to the complex legal and factual controversies presented in
19 this Complaint. By contrast, a class action presents far fewer management difficulties and provides
20 the benefits of single adjudication, economy of scale, and comprehensive supervision by a single
21 court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be
22 ensured.

23    39.   Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class
24 Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the Class)**

40. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

41. California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

42. The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact. A business practice need only meet one of the three criteria to be considered unfair competition.

43. The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

44. As described herein, Defendant has engaged in fraudulent and unfair business practices, as defined by the UCL, by misrepresenting that Hotspot Shield categorically anonymizes its users' web browsing.

45. Defendant's representations were, in fact, false. Defendant's software does not (and cannot) actually perform all of the benefits that it promises through its marketing and websites. In particular, Hotspot Shield doesn't anonymize users' web browsing activities when visiting HTTPS websites.

46. Defendant has violated the fraudulent prong of the UCL by knowingly making false representations to consumers—including Plaintiff and the Class—regarding Hotspot Shield's ability to anonymize users' web browsing. These representations were made in an effort to convince consumers to purchase Hotspot Shield.

47. Reasonable consumers are likely to be, and Plaintiff and the Class were deceived by AnchorFree's misrepresentations about the full scope of benefits that Hotspot Shield offers.

48. Defendant also violated the UCL's unfair prong by causing substantial injury to consumers through its fraudulent conduct described above. The injuries caused by Defendant's unfair conduct are not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided. Given the information asymmetry between Defendant and consumers regarding Hotspot Shield's functionality, Defendant knew or had reason to know that Plaintiff and the Class could not have reasonably known or discovered the falsity of representations about Hotspot Shield's ability to anonymize users' web browsing.

49. Defendant's fraudulent and unfair conduct occurred during the marketing and sale of computer software products, and therefore occurred in the course of Defendant's business practices.

50. Defendant's fraudulent and unfair conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for Hotspot Shield—typically $29.95—or, at least, the difference between what they paid for the software and its actual value.

51. But for Defendant's conduct as described herein, Plaintiff and the Class would not have purchased the Hotspot Shield software, or would have paid substantially less for it.

52. Defendant's conduct as described herein is ongoing and continues to this date. Thus, Plaintiff seeks an order under Cal. Bus. & Prof. Code § 17203 that (i) permanently enjoins Defendant from continuing to engage in the fraudulent and unfair conduct described herein; (ii) compels Defendant to inform Hotspot Shield users that the software doesn't work as advertised, and (iii) requires Defendant to pay reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

**SECOND CAUSE OF ACTION**
**Violations of the False and Misleading Advertising Law**
**California Business & Professional Code § 17500, *et seq.***
**(On Behalf of Plaintiff and the Class)**

53. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

54. California's False and Misleading Advertising Law ("FAL") prohibits corporations from intentionally disseminating advertisements for products or services that are "unfair, deceptive,

1 untrue, or misleading." Cal. Bus. & Prof. Code §17500.

55. As depicted in <u>Figures 1-5</u> and detailed throughout this Complaint, AnchorFree has disseminated unfair, deceptive, untrue, and misleading advertisements that claim Hotspot Shield anonymizes its users' web browsing activities. <u>Section II</u> above details why these advertisements are false and misleading, and designed to convince consumers to purchase the software. In short, AnchorFree's advertisements omit the fact that Hotspot Shield doesn't anonymize web browsing activity when visiting HTTPS website, which comprise a large contingent of the World Wide Web.

56. A reasonable person is likely to be deceived by AnchorFree's advertisements because it is not evident or apparent that Hotspot Shield is actually anonymizing their web browsing.

57. AnchorFree knew or should have known when creating and disseminating these advertisements that they contained materially false and misleading information. As the developer of Hotspot Shield, AnchorFree is intimately familiar with the software's functionality. Thus, it's reasonable to infer that AnchorFree is aware of the fact that Hotspot Shield doesn't anonymize HTTPS web browsing activities.

58. Defendant's conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for Hotspot Shield—typically $29.95—or, at least, the difference between what they paid for the software and its actual value.

59. Defendant's conduct as described herein is ongoing and continues to this date. Thus, Plaintiff and the Class request that the Court enjoin AnchorFree from creating and disseminating advertisements that misrepresent the true utility of Hotspot Shield in violation of Cal. Bus. & Prof. Code §17500. In addition, Plaintiff and the Class seek an order requiring AnchorFree to inform current Hotspot Shield users that the software doesn't function as advertised.

**THIRD CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

60. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

61.     Plaintiff and members of the Class members entered into agreements with Defendant whereby Defendant agreed to sell, and Plaintiff and the Class agreed to purchase software that would them to browse the World Wide Web anonymously.

62.     Based on the foregoing representations, Plaintiff and the Class paid, and Defendant accepted, Hotspot Shield's purchase price, and therefore performed their obligations under the contracts.

63.     As such, Defendant voluntarily assumed a contractual obligation to provide Plaintiff and the Class with software that anonymized their web browsing activities. This obligation is a material term of the agreement. Defendant did not honor this obligation.

64.     Defendant breached its contracts with Plaintiff and the Class by intentionally designing and distributing Hotspot Shield software that doesn't mask its users' IP addresses when visiting HTTPS websites.

65.     The aforementioned breaches of contract have directly and proximately caused Plaintiff and the Class economic injury and other damages, including in the form of the purchase price ($29.95) of Hotspot Shield software, because they purchased a product that does not perform as Defendant promised, and therefore lacks the utility contracted for.

66.     As a result, Plaintiff and the Class request that the Court enjoin AnchorFree from continuing to misrepresent the functionality of its software. Plaintiff and the Class also seek an order requiring AnchorFree to inform current Hotspot Shield users that the software doesn't function as advertised. In addition, Plaintiff prays for relief in the amount of the purchase price that he and the Class paid for Hotspot Shield.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff John McClain on behalf of himself and the Class respectfully requests that the Court enter an order:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing John McClain as representative of the Class, and appointing his counsel as class counsel;

1        B.      Declaring that Defendant's actions, as set out above, violate California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), the False and Misleading Advertising Law (California Bus. & Prof. Code §§ 17500, *et seq.*), and constitute breach of contract;

       C.      Awarding damages, including statutory and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

       D.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*: an order (i) prohibiting Defendant from engaging in the wrongful and unlawful acts described herein; (ii) requiring Defendant to disclose and admit the wrongful and unlawful acts described herein; and (iii) requiring Defendant to fully disclose the true nature of its software products now and in the future;

       E.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

       F.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

       G.      Awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

       H.      Awarding such other and further relief as the Court deems reasonable and just.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**JOHN MCCLAIN**, individually and on behalf of all others similarly situated,

Dated: March 19, 2014        By:  /s/ Mark Eisen
                                                    One of Plaintiff's Attorneys

Mark Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100

| | |
|---|---|
| 1 | Fax: 213.947.4251 |
| 2 | Jay Edelson* |
| | jedelson@edelson.com |
| 3 | Rafey S. Balabanian* |
| | rbalabanian@edelson.com |
| 4 | Benjamin S. Thomassen* |
| | bthomassen@edelson.com |
| 5 | Chandler R. Givens* |
| | cgivens@edelson.com |
| 6 | EDELSON PC |
| | 350 North LaSalle Street, Suite 1300 |
| 7 | Chicago, Illinois 60654 |
| | Tel: 312.589.6370 |
| 8 | Fax: 312.589.6378 |

*Pro hac vice* admission to be sought.

*Attorneys for Plaintiff and the Putative Class*